UNITED STATES of America, Appellee,

v.

Samuel J. CONCEMI, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

Walter RIBECK, Defendant, Appellant.

Nos. 91–1241, 91–1249.

United States Court of Appeals,
First Circuit.

Heard Sept. 11, 1991.

Decided March 4, 1992.

As Amended March 16, 1992.

**944**

James E. Carroll, with whom Harvey Weiner, Maureen Mulligan and Peabody & Arnold, Boston, Mass., were on brief for defendant, appellant Samuel J. Concemi.

Reginald L. Marden, Andover, Mass., for defendant, appellant Walter Ribeck.

Margaret R. Hinkle, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for appellee.

Before TORRUELLA, Circuit Judge, TIMBERS,* Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Circuit Judge.

On October 2, 1990, a federal grand jury returned a 35 Count indictment charging defendants/appellants, Samuel J. Concemi ("Concemi"), Walter Ribeck ("Ribeck") and non-appellant Patricia A. Hajjar ("Hajjar"), with one count of conspiracy in violation of 18 U.S.C. § 371, 17 counts of bank fraud in violation of 18 U.S.C. § 1344, 17 counts of making false statements to a federally in-sured bank in violation of 18 U.S.C. § 1014, all in violation of 18 U.S.C. § 2, aiding and abetting bank fraud and false statements. The jury returned verdicts of guilty on all counts on December 20, 1990. Concemi was sentenced to 36 months of incarcera-tion to be followed by two years of super-vised release and ordered to pay restitution and a fine. Ribeck was sentenced to 24 months of incarceration to be followed by two years of supervised release and or-dered to pay restitution and a fine.

Appellants raise numerous issues as grounds for reversal. They challenge the propriety of the district court's sequester-ing the jury after informing it of allegedly prejudicial information; the district court's refusal to admit certain evidence, allegedly denying appellants the right to effectively cross-examine and impeach one of the government's witnesses; the district court's requiring Concemi to answer a question on cross-examination, allegedly in violation of his Fifth Amendment privilege; the district court's alleged unwarranted in-structions to the jury regarding a govern-ment witness' testimony; the propriety of the trial court's partial denial of a subpoe-na *duces tecum;* the sufficiency of the evidence and the district court's refusal to grant a continuance at sentencing so that appellants could make a proof of value of loss. We affirm.

### FACTS/BACKGROUND

The indictments stemmed from seven-teen real estate transactions involving ComFed Savings Bank ("ComFed"), a fed-erally-chartered bank insured by the Feder-al Savings and Loan Insurance Corpora-tion. Specifically, it was alleged that Con-cemi, as the closing attorney, Ribeck, as the real estate broker and Hajjar, as a ComFed employee,[1] executed and concealed secondary financing agreements on certain

---

* Of the Second Circuit, sitting by designation.

1. Between July of 1985 and April of 1989, Hajjar was a loan originator for ComFed. During part of that time, August 1987 through April 9, 1989, she worked as the Branch Manager of the Sa-lem, New Hampshire office of ComFed Mort-gage Corporation. ComFed Mortgage Corpora-

"Door Opener" loans,[2] in violation of ComFed's underwriting policies.

Concemi's and Ribeck's trial lasted fourteen days. During the trial certain events transpired, some fortuitous, which defendants claim deprived them of their right to a fair trial.

## DISCUSSION

### I

### *Prejudicial Publicity*

On the morning of Friday, December 14, 1990, the tenth day of trial, the Federal Deposit Insurance Corporation ("FDIC") seized ComFed. By this time in the trial, the jury had heard testimony from numerous government witnesses and reviewed a myriad of government exhibits, at times, involving complex real estate and banking transactions. Defendant Concemi was to take the stand that same day. The government informed both defense counsel and the district court of the FDIC takeover of ComFed. Defense counsel for Ribeck requested that upon termination of the government's presentation of its case the district court grant a recess until Monday, so that more could be learned about the ComFed takeover and whether it might prejudice the defendants' right to a fair trial. Concemi's counsel joined in the request. The district court suggested sequestering the jury, but defense counsel refused. Finally, the district judge stated, "I am going to keep going today. That is all I am going to say. Do you want me to tell the jury the bank was taken over by the F.D.I.C. and they are not to read the media or listen to it?" (Tr. Vol. 10 p. 8). Defense counsel and the government prosecutor consented to the district court's suggestion. The following instruction was then given to the jury:

> Members of the jury, I want to give you an instruction: Today at 10:30 this morning the F.D.I.C. took over ComFed. Now, that will be in the news tonight and tomorrow. So I am instructing you not to read anything that is in the papers and not to watch TV or listen to a radio discussion of the significance of the F.D.I.C. taking over ComFed. And I want you to honor that instruction. It is very important to the people in this case.

(Tr. Vol. 10 p. 9). As scheduled, Concemi's testimony began on Friday, December 14, 1990. Furthermore, the jury was sequestered later that afternoon until the end of the trial. We are to determine whether and to what extent the defendants' right to a fair trial might have been prejudiced by informing the jury of the ComFed takeover by the FDIC.

The district court's decision whether or not to sequester the jury, or how to instruct the jury, falls within the court's broad supervisory discretion. *See Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975); *United States v. Porcaro*, 648 F.2d 753, 755 (1st Cir.1981) (citing *Mastrian v. McManus*, 554 F.2d 813, 818 (8th Cir.1977), *cert. denied*, 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977)). These decisions will be affirmed absent an abuse of discretion. However, "[i]n the absence of a timely objection our review is limited to examining the record for plain error ..." *United States v. Munson*, 819 F.2d 337, 340 (1st Cir.1987). Under the plain error doctrine, we will "correct only 'particularly egregious errors' ... that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982); *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)). In the present case, there was no objection by either defense counsel to informing the jury of the alleged prejudicial information. Defense counsel

---

tion was a wholly-owned subsidiary of ComFed Savings Bank.

**2.** The "Door Opener" loan was a special limited verification loan, largely intended for first time home buyers. It is alleged that pursuant to ComFed's underwriting policy, the "Door Opener" loans at issue required at least twenty percent (20%) down payment and that undisclosed secondary financing or one hundred percent (100%) financing was prohibited.

did express concern to publishing the FDIC takeover to the jury, but ultimately consented to the district court's instructions. Thus, we must review the record for plain error.

This Court has never reviewed a case where the alleged prejudicial information was published to the jury by the district court itself and then the jury sequestered in order to shield it from prejudice that might result from that same information. We have, however, discussed the proper procedures that a district court should take when potentially prejudicial information may have reached the jury. Although not dispositive on the issue presented here, those cases are instructive.

In *United States v. Perrotta*, 553 F.2d 247 (1st Cir.1977), we adopted the standard annunciated in *Margoles v. United States*, 407 F.2d 727 (7th Cir.), *cert. denied*, 396 U.S. 833, 90 S.Ct. 89, 24 L.Ed.2d 84 (1969):

> [W]here prejudicial publicity is brought to the court's attention during a trial ... the court must ascertain if any jurors who had been exposed to such publicity had read or heard the same. Such jurors who respond affirmatively must then be examined, individually and outside the presence of the other jurors, to determine the effect of the publicity. However, if no juror indicates, upon inquiry made to the jury collectively, that he has read or heard any of the publicity in question, the judge is not required to proceed further.

*Perrotta*, 553 F.2d at 250, (quoting *Margoles*, 407 F.2d at 735). Of course the district court must first determine whether or not the information is actually prejudicial.[3] *Porcaro*, 648 F.2d at 757 (citing *Perrotta*, 553 F.2d at 249–50). Generally, it is incumbent upon counsel to make a timely request that the jurors be polled. However, "there may be cases in which the likelihood of prejudice is so great as to require the trial judge to question the jurors *sua sponte* ..." *Id.*, (citing *Perrotta*, 553 F.2d at 251 & n. 9; *United States v. Beitscher*, 467 F.2d 269, 274 (10th Cir. 1972)).

In the case at bar, it is highly unlikely that the jury had any knowledge of the ComFed takeover which took place on the morning of December 14, 1990.[4] Thus this case differs from those where the jury already has been or may have been exposed to potentially prejudicial publicity. However, the same principles apply here. In order to assure that defendants are afforded their due process right to a fair trial, the district court should do everything within its authority to insure that prejudicial publicity not reach the jury.

 If upon learning of potentially prejudicial information, the district court thinks that sequestration is warranted, the jury should be sequestered.[5] However such extreme measures are not always necessary. The district court still has the option of instructing the jury, as it did here, to avoid the publicity, without disclosing its content, in whatever manner the particular circumstances dictate. Here the district court, after conferring with and getting consent from defense counsel, instructed the jury to disregard any news of the ComFed takeover. Appellants cannot now seek reversal for the district court's instruction, of which they were the proponents. Neither can they show that the district court's actions constituted error much less plain error.

## II

### *The Prospectus*

During the course of the trial, defendants were denied the opportunity to admit

---

3. The district court's instructions to and sequestration of the jury indicate the fact that the district court considered the ComFed takeover to be potentially prejudicial.

4. News of the ComFed takeover by the FDIC was provided to the government prosecutor by the Federal Bureau of Investigation on the morning of December 14, 1990. At that time the ComFed takeover was not made public. It was made public later that day. We feel comfortable in assuming that the jurors had no knowledge of the ComFed takeover on the morning of December 14, 1990.

5. As stated earlier, the decision to sequester falls within the sound discretion of the district court.

into evidence a lengthy Prospectus outlining some of ComFed's underwriting policies. The Prospectus allegedly proved that ComFed's underwriting policies permitted secondary financing with at least some of the "Door Opener" loans involved herein. Appellants claim that the Prospectus would have impeached earlier testimony given by one of the government's chief witnesses, ComFed's Chief Executive Officer, Jack Zoeller ("Zoeller"); that secondary financing was not permissible. The district court sustained the prosecution's objection to the admission of the Prospectus on the grounds that it was irrelevant and that it would confuse the jury. (Tr. Vol. 3 p. 114, Vol. 3 p. 116, Vol. 3 p. 118).

 Contrary to defendants' assertions, Zoeller testified that some "Door Opener" loans, the full verification version, did in fact permit secondary financing. Furthermore, Zoeller testified that under no circumstances was undisclosed secondary financing permitted. (Tr. Vol. 3 pp. 43–44). Defendants made no proffer that the Prospectus would refute or impeach Zoeller's testimony. "The Sixth Amendment right of a criminal defendant 'to be confronted with the witnesses against him' includes the right to impeach credibility through cross examination." *United States v. Tracey*, 675 F.2d 433, 437 (1st Cir.1982) (quoting *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974)). However, the right to cross-examine is not absolute. "The court need not permit unending excursions into each and every matter touching upon veracity if a reasonably complete picture has already been developed." *United States v. Fortes*, 619 F.2d 108, 118 (1st Cir.1980). The trial court's supervision and control over cross-examination is a discretionary function, and we review those decisions under an abuse of discretion standard. *See*

*Tracey*, 675 F.2d at 437–38. In reviewing the transcripts of the trial, we note that defendants were allowed to cross-examine Zoeller on a wide range of topics for a considerable length of time.[6] We hold that the defendants' Sixth Amendment right was not violated and the district court did not abuse its discretion in excluding the Prospectus. Therefore, exclusion of the Prospectus does not warrant reversal.

## III

### *Fifth Amendment Privilege*

While testifying on cross-examination, Concemi attempted to invoke his Fifth Amendment privilege against self-incrimination. When asked whether he knew that the information on a certain HUD–1[7] certificate involved in one of these sales was not true and accurate when he signed it, Concemi refused to give a direct answer. On advice of his counsel, Concemi attempted to exercise his Fifth Amendment right to remain silent. To this, in the presence of the jury, the district court stated: "I rule that you have no Fifth Amendment rights, in view of the fact you testified on direct, and this far on cross examination. So I am telling you to answer that question." (Tr. Vol. 10 II p. 76). Concemi claims that the district court then failed to instruct the jury not to draw any inference against Concemi because he invoked his Fifth Amendment privilege. In effect, according to Concemi, the district court shifted the burden to Concemi to prove his innocence. He claims that this error alone, coupled with the prejudicial jury announcement of the ComFed takeover, all on the day that Concemi took the stand, requires reversal and a new trial. We disagree.

 If a criminal defendant takes the stand and testifies in his own defense, "his

---

6. Cross examination of Zoeller started on December 4, 1990 and continued through the next day, and extends over 150 transcript pages. (Tr. 3–95—4–103).

7. HUD–1 certificates are prepared forms commonly used in mortgage loan transactions as settlement statements. The standard language on the HUD–1 certificate contains an attestation clause which in the transactions involved here reads as follows: "The HUD–1 Settlement Statement which I prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement." The closing attorney, in this case Concemi, signs the clause in preparing the documents for the loan transaction.

credibility may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination." *Brown v. United States*, 356 U.S. 148, 154–55, 78 S.Ct. 622, 626–27, 2 L.Ed.2d 589 (1958); *see also United States v. Nivica*, 887 F.2d 1110, 1117 (1st Cir.), *cert. denied*, 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1989). Before attempting to invoke his Fifth Amendment privilege, Concemi testified extensively on direct examination, and up to this point on cross-examination, answering questions regarding HUD–1 certificates in 11 other transactions involved in this case. As to those issues, he had waived his Fifth Amendment privilege on cross-examination. The district court properly apprised Concemi that his privilege was waived and instructed him to answer the question. Moreover, Concemi's trial counsel did not request that the district court instruct the jury not to draw any inferences from the instruction. Thus we can only reverse for plain error. We find none.

■ Furthermore, Concemi's contention that he was prejudiced by the district court's comment, and that the burden of proof was shifted to him, is meritless. In its instructions to the jury, the district court repeatedly safeguarded Concemi's presumption of innocence and reconfirmed that the government and not the defendants bore the burden of proof. "The burden of proving that each defendant is guilty *rests upon the Government. The burden is not on the defendants* to prove that they are not guilty. *The burden of proof remains on the Government throughout the entire trial*, and at no stage of the case does it shift to the defendants." (Tr. Dec. 19 p. 4) (emphasis added). Any prejudice that could have resulted from the district court's instructing Concemi to answer the question amounted to harmless error and certainly did not rise to a magnitude justifying reversal, as it was cured by the final instructions to the jury. *See United States v. Maguire*, 918 F.2d 254, 268 (1st Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1421, 113 L.Ed.2d 474 (1990).

## IV

### Instructions Regarding Testimony

Defendants also claim that the district court's comment following an answer on cross-examination by Concemi's former secretary, a government witness, impermissibly interfered with the jury's assessment of the witness' testimony. The dialogue in pertinent part was as follows:

Q. How much of a percentage in a given year was the ComFed work compared to all of Sam's [Concemi] other work?

A. Not very much at all.

Q. Very minuscule, wasn't it?

A. Yes.

Q. Enough to cheat and steal over?

A. No.

THE COURT: I want to tell the jury when a question is asked and answered with the word "no", the fact the lawyer framed the question is no evidence of the facts ever existing.

Go ahead.

MR. BENJOYA [Concemi's counsel]: I didn't understand that the lawyer's question is not evidence.

THE COURT: The lawyer's question is not evidence of the facts suggested by the way the question is framed. Why didn't you kill cock robin? The witness said no. No evidence whatsoever the person killed cock robin.

MR. BENJOYA: I agree entirely.

(Tr. Vol. 7 p. 22). No objections to the judge's instruction were raised by defense counsel. To the contrary, Concemi's defense counsel "agree[d] entirely". The issue was not preserved for appeal by an objection and we can only reverse for plain error.

■ "A federal district court judge retains the common law power to explain, summarize and comment on the facts and evidence." *United States v. Paiva*, 892 F.2d 148, 159 (1st Cir.1989) (citing *Quercia v. United States*, 289 U.S. 466, 469–70, 53 S.Ct. 698, 698–99, 77 L.Ed. 1321 (1933); *Doherty v. Doherty Insurance Agency*, 878 F.2d 546, 553 (1st Cir.1989); *Aggarwal*

*v. Ponce School of Medicine,* 837 F.2d 17, 22 (1st Cir.1988); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2557 (West 1971)). "In commenting on the testimony or questioning witnesses, however, the judge may not assume the role of a witness." *Id.* (citing *Quercia,* 289 U.S. at 470, 53 S.Ct. at 699; *Tyler v. Swenson,* 427 F.2d 412, 416 (8th Cir.1970); *Terrell v. United States,* 6 F.2d 498, 499 (4th Cir.1925)). "He may analyze and dissect the evidence, but he may not either distort it or add to it." *Maguire,* 918 F.2d at 268 (citing *Quercia,* 289 U.S. at 470, 53 S.Ct. at 699).

The district judge acted well within his authority in instructing the jury on the witness' answer. He merely clarified the effect of a "no" answer given on cross-examination. Nothing was said to distort or add to the testimony. Thus, there was no error.

## V

### *The Subpoena Duces Tecum*

On Thursday afternoon, December 14, 1990, Ribeck served a thirty-two paragraph *subpoena duces tecum* on ComFed requesting the production of personnel files, minutes of meetings, financial statements, bank policies and the like, for over a three-year period. Compliance with the subpoena was to take place on Monday, December 17, 1990, at 9:30 a.m. ComFed filed a motion to quash, arguing that, in light of the breadth of the subpoena, the limited time allowed for compliance and the inaccessibility to some of the documents due to the ComFed takeover, it could not comply fully with the subpoena. The district court granted the motion to quash, with the exception of four of the subpoenaed materials. Ribeck contends that the district court erred in partially granting the motion to quash, as the documents which he sought

to produce would have contradicted the testimony of the prosecution witnesses.

"The scope of discovery is within the discretion of the district court. We review a district court's discovery ruling for abuse of discretion." *United States v. Williams,* 791 F.2d 1383, 1387 (9th Cir.), *cert. denied,* 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986) (citing *United States v. Clegg,* 740 F.2d 16, 18 (9th Cir.1984); *United States v. Duncan,* 693 F.2d 971, 979 (9th Cir.1982), *cert. denied,* 461 U.S. 961, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983)). Furthermore, "a ruling quashing a subpoena is appealable after conviction, [however] the trial court has so much discretion in this area that reversal is unlikely." *United States v. Lieberman,* 608 F.2d 889, 904 (1st Cir.1979), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 673, 62 L.Ed.2d 649 (1980). "The moving party must show, among other things, that the material he seeks is evidentiary and relevant." *Id.* (citing *United States v. Iozia,* 13 F.R.D. 335, 338 (S.D.N.Y.1952), cited in *United States v. Nixon,* 418 U.S. 683, 702, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039 (1974)).

Ribeck's only contention is that he "believes" the documents would have shown what the true lending policies of ComFed were and that this could have contradicted government witnesses. (Brief for Appellant Ribeck pp. 25, 27). Mere speculation as to the content of documents is hardly a showing of relevance. The district court granted discovery of those requests which it felt were reasonable and relevant. Considering the time constraints, the inaccessibility of some of the documents, the questionable relevance of the documents and the breadth of some of the requests,[8] we cannot say that it was an abuse of discretion to limit the scope of the subpoena. *See id.* Even assuming the relevance of the subpoenaed documents, we see nothing in the record which leads us

---

8. For example, paragraph 30 of the *subpoena* sought production of:
 Any and all employment agreements, payroll records, or any other writings evidencing employment agreements between the following employees of ComFed as to how and in what manner they were paid for their services and

the reasons why they either resigned f[ro]m employment or were terminated from employment: Frank Buco, Patricia Hajjar, Cynthia Lawrenson, Valerie Rydell, Peter G. Savard, Cynthia Erakine, Vincent Crupi, and Donna Balsamo.

to conclude that the trial court abused its broad discretion in denying the request.

## VI

### *Sufficiency of the Evidence*

Defendants claim that the evidence presented at trial was insufficient to sustain a conviction for conspiracy, bank fraud and making false statements to a federally-insured institution. A review of the record indicates the contrary.

■ At the close of the government's case, the defendants filed motions for judgments of acquittal which were denied. (Tr. Vol. 10 pp. 65, 77). The defendants proceeded to present their case, but failed to renew their motions after offering evidence in their defense. It is an established rule in this Circuit that in order to challenge the sufficiency of the evidence after a conviction, the defendant must have moved for an acquittal at trial. *United States v. Greenleaf,* 692 F.2d 182, 185 (1st Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946, 460 U.S. 1069, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983). Absent a renewal of the motion for acquittal after presenting the case for the defense, the motion for acquittal is considered waived. Hence in order to prevail on a challenge to the sufficiency of the evidence, "the defendants must then demonstrate 'clear and gross' injustice." *Id.* (quoting *United States v. Kilcullen,* 546 F.2d 435, 441 (1st Cir.1976), *cert. denied,* 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977)). We are unable to find, in light of the evidence presented at trial, that the defendants convictions were clearly and grossly unjust.

■ At trial, it was disclosed that Concemi, as closing attorney, and Ribeck, as the seller in some of the transactions and real estate agent in others, executed or caused to be executed inaccurate HUD-1 certificates or settlement statements. The certificates were inaccurate in that they failed to disclose the fact that secondary mortgages were issued in connection with the loan transactions. In fact, there is no mention of secondary financing on the HUD-1 certificates which were returned to ComFed. Ribeck did prepare accurate documents, reflecting the existence of second mortgages, but they were kept in his personal office files and never revealed to ComFed.

Concemi prepared "Deviation Agreements" or "Memos of Sale" which he had the buyers execute in connection with the sale of the homes. These "Deviation Agreements" and "Memos of Sale," likewise, were never made part of ComFed's files. They were kept in separate files by Concemi and Ribeck. Concemi did cause these documents to be recorded in the proper offices of conveyance. However, contrary to his assertions, there was no showing that he ever made that fact known to ComFed. The evidence produced at trial strongly suggests, and a reasonable jury could have reasonably concluded, that these documents were concealed from ComFed.

*Conspiracy:*

■ The essential element of a conspiracy is the existence of an agreement, which may be inferred from " 'a development and collocation of circumstances.' " *United States v. Smith,* 680 F.2d 255, 259 (1st Cir.1982), *cert. denied,* 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983) (citations omitted). Stated another way, "conspiratorial agreement need not be express so long as its existence can plausibly be inferred from the defendants' words and actions and the interdependence of activities and persons involved." *United States v. Boylan,* 898 F.2d 230, 241–42 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 139, 112 L.Ed.2d 106 (1991) (citations omitted).

■ There is abundant evidence in the record supporting the conspiracy conviction. It is apparent that the mutual cooperation of Concemi, Ribeck and Hajjar was essential in order to execute the scheme to use secondary mortgages and conceal them from ComFed. Ribeck and Hajjar specifically told various buyers, whose loans are the subject of this prosecution, to use Concemi as their closing attorney. Ribeck suggested that buyers use ComFed to finance their mortgages. Testimony showed that in at least one transaction Ribeck paid the

buyer's transaction fee because the buyer lacked sufficient funds.

Finally, in purchasing other properties, Ribeck used four of the second mortgages to secure a line of credit from the New Heritage Bank, requesting that Concemi, because of his familiarity with the nature of the mortgages and the collateral, draft the necessary documents. An agreement between the parties can be easily inferred from this circumstantial evidence.

*Bank Fraud:*

18 U.S.C. § 1344 states in pertinent part that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
> (1) to defraud a federally chartered or insured financial institution; or
> (2) to obtain any of the moneys, funds, credits, assets, securities or other property owned by or under the custody or control of a federally chartered or insured financial institution by means of false or fraudulent pretenses, representations, or promises, [shall be guilty of an offense against the United States].

Ribeck was the seller on five of the mortgages in this case and the broker on six others. He prepared two sets of addenda to the purchase and sale agreements, one containing false information about the second mortgages and one, which was not disclosed to ComFed but kept in Ribeck's office files, containing accurate information. Furthermore, Ribeck instructed his employees-salespersons and agents to follow the same procedure.

Similarly, Concemi was the closing attorney on all 17 transactions. He prepared "Deviation Agreements" and "Memos of Sale" which contained the accurate information regarding the second mortgages. While he provided ComFed with the conventional closing documents, i.e., HUD–1 certificates, none of which reflected or disclosed secondary financing, the "Deviation Agreements" and "Memos of Sale" were never provided to ComFed. Concemi subsequently recorded or caused to be recorded in the conveyance records, the "Deviation Agreements" and "Memos of Sale." However, there was no showing at trial,

contrary to his assertions, that he disclosed the secondary financing to ComFed.

*False Statements:*

To support a conviction under 18 U.S.C. § 1014, false statements, the government must prove that (i) the defendant made or caused to be made a false statement or report to a bank upon an application, commitment or loan, and that the false statement concerned a material fact; (ii) that the defendant acted knowingly; (iii) that the false statement or report was made for the purpose of influencing in any way the bank's action on the loan; and (iv) that the false statement or report was made to a bank whose deposits were then insured by the Federal Savings and Loan Insurance Corporation. *Williams v. United States,* 458 U.S. 279, 284, 102 S.Ct. 3088, 3091, 73 L.Ed.2d 767 (1982). Again here, the evidence presented at trial overwhelmingly supports a conviction. Concemi and Ribeck, by admission and as proven at trial, knowingly executed and caused to be executed inaccurate HUD–1 certificates. These certificates were inaccurately completed so that ComFed would issue loans on the property in question. In their defense, Concemi and Ribeck rely on the "Memos of Sale" and "Deviation Agreements" which they allegedly executed to disclose the true terms of the loans. However, contrary to their contentions, there was no proof offered at trial to the jury's satisfaction that these documents were disclosed to ComFed. Furthermore, the fact remains that Ribeck and Concemi knowingly executed and caused to be executed false statements for the purpose of influencing ComFed to make loans. Thus the convictions for making false statements to a bank must stand.

The evidence in the record convinces us that the verdicts were supported by sufficient evidence and certainly not clearly gross or unjust. Thus the convictions stand.

## VII

### *Continuance at Sentencing*

Finally, Concemi and Ribeck assert that the trial court erred in denying their

motion for continuance at sentencing so that they could offer proof of the amount of the victim loss occasioned by the crimes of conviction. Specifically, Concemi and Ribeck argue that the district court erred in denying them the opportunity to present other evidence which would have reduced the total amount of victim loss represented in the presentence investigation report.

The presentence report prepared by the Probation Department calculated ComFed's loss to be $1,043,000. Relying on four factors, (i) the depressed regional economy; (ii) ComFed's lack of internal control as to its lending practices and employee regulation; (iii) failure of ComFed to dispose of the property in default on a timely basis; and (iv) ComFed's failure to maintain the foreclosed property in good repair, the Probation Department reduced the total loss by $44,000. Thus, under U.S.S.G. § 2F1.1 the total amount of victim loss was within the $500,000 to $1,000,000 range and Ribeck and Concemi were sentenced accordingly.[9]

█ Appellants claim that they should have been given an opportunity to present other evidence for the district court's consideration. As an example they state that ComFed purchased some of the properties subject to these loans at foreclosure sales and listed these properties as assets. However, in calculating the loss suffered by ComFed, the probation department valued the homes and did not take into consideration the fact that ComFed actually acquired the homes as assets. In short, appellants claim that the amount of loss should have been calculated as the difference between the fair market value of the property, plus interest, minus the price paid by ComFed.[10] We disagree.

We review the trial court's decision for abuse of discretion. *United States v. Gerante*, 891 F.2d 364, 367 (1st Cir.1989). The

commentary to U.S.S.G. § 6A1.3 states in part that "[w]hen a reasonable dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information. Written statements of counsel or affidavits of witnesses may be adequate under many circumstances."

The presentence report was issued on February 19, 1991. The sentencing hearing was not held until March 11, 1991. In the interim, both defendants filed written objections, Ribeck with the probation department and Concemi with the district court. Furthermore, at the sentencing hearing, Ribeck's counsel argued his objections to the trial judge. Concemi chose not to do so. It is clear to us that both defendants had ample opportunity to present evidence to the trial court regarding valuation of victim loss and in fact took advantage of that opportunity as they saw fit. The trial judge, based on the evidence presented in the presentence report and the written and oral objections before him, made a determination that defendants were not entitled to an evidentiary hearing to present further proof of loss. We hold that this determination was well within the trial court's discretion.

Furthermore, under the applicable guidelines, appellants would have had to show that the trial court's valuation erred by in excess of $450,000 in order to reach the next level of reduction, $200,000—$500,000. The only evidence cited in their briefs is the Vargus loan by which they allege that the district court overvalued the loss by approximately $79,000. This falls far short of the $450,000 showing necessary for a reduction in sentence.

Finally, Concemi was sentenced to 36 months, within the applicable 33–41 month

9. Concemi's base offense level was calculated to be 18, and Ribeck's 16. The district court enhanced Concemi's sentence base offense level two points, to 20 for obstruction of justice, holding that he had testified untruthfully at trial.

10. For example, the amount of loss on one of the loans, the Vargus loan, was calculated by the probation department to be $118,000.

ComFed purchased the property at foreclosure for $94,500. At the time of foreclosure the outstanding balance on the loan was $134,000. Thus, according to appellants the value of loss should have been calculated as $39,500; the difference between the loan balance and the price ComFed paid at the foreclosure sale.

range, and Ribeck to 24 months, within the applicable 21–27 month range. Should they have been able to prove that the amount of victim loss was excessive, thereby entitling them to the next reduction level, the sentences would fall in the range of 30–37 months for Concemi and 18–24 months for Ribeck. Under their present sentences, they would still fall within the reduced sentencing levels, thus any error in the calculation of the value of loss would be harmless. *See United States v. Bermingham,* 855 F.2d 925, 926 (2d Cir.1988) (holding that the overlapping of the guideline ranges was designed to minimize the need to resolve these type of disputes, unless there is a showing that the sentences imposed were near or at the low end of the applicable guideline range).

The decision of the district court is *affirmed.*