USCA1 Opinion

 

 [NOT FOR PUBLICATION] United States Court of Appeals For the First Circuit ____________________ No. 95-2264 UNITED STATES OF AMERICA, Appellee, v. JUAN AROCHO GONZALEZ, Defendant, Appellant. ____________________ No. 95-1652 UNITED STATES OF AMERICA, Appellee, v. ROBERTO AROCHO GONZALEZ, Defendant, Appellant. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ___________________ Before Stahl, Circuit Judge, _____________  Campbell, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Raymond Luis Sanchez Maceira for appellant Roberto Arocho ________________________________ Gonzalez. Peter Diaz-Santiago for appellant Juan Arocho Gonzalez. ___________________ Jeanette Mercado-Rios, Assistant United States Attorney, with ______________________ whom Jose A. Quiles-Espinosa, Senior Litigation Counsel, Edwin O. ________________________ _________ Vazquez, and Nelson Perez-Sosa, Assistant United States Attorneys, and _______ _________________ Guillermo Gil, United States Attorney, were on brief for appellee. _____________ ____________________ August 1, 1996 ____________________ LYNCH, Circuit Judge. Two brothers, Roberto and LYNCH, Circuit Judge. ______________ Juan Arocho Gonzalez, were accused by the government of running a cocaine sales ring out of an apartment in the Agustin Stahl Housing Project in Aguadilla, Puerto Rico. After a jury trial, they were convicted on all counts of an eleven count indictment charging them with conspiring to possess cocaine with the intent to distribute it, with distributing cocaine within 1000 feet of a public school, with engaging in a Continuing Criminal Enterprise ("CCE"), and with hiring minors to distribute cocaine. Both brothers received the mandatory minimum sentence of twenty years. They appeal, admitting that they sold small quantities of narcotics, but contending that the evidence was insufficient to establish the elements of a CCE violation. They also assert that the trial court committed reversible error in denying their motions to substitute counsel, in declining to find Brady error, and in calculating the amount of drugs _____ attributable to them for sentencing purposes. We affirm. I. Because the sufficiency of the evidence is at issue, we describe the facts in the light most favorable to the government, as the jury could have found them. See ___ United States v. Hahn, 17 F.3d 502, 505 (1st Cir. 1994). _____________ ____ Local police received information that a drug point was being operated out of the Housing Project. From May -3- 3 through November of 1994, federal Drug Enforcement Administration special agents and local police observed and videotaped activities conducted from Apartments 165 and 161. Roberto and Juan1 lived in Apartment 161, which was leased in their mother's name. The two apartments are about twenty feet from each other and both are less than eighty feet from an elementary school. Visual surveillance established that the drug point was in operation about eighteen hours a day, seven days a week. Sales were made by drug peddlers in front of Apartment 161. Cars would pull up in front of the apartment, where the drivers would exchange money for small plastic bags containing cocaine. The peddlers making the exchanges would take the money into Apartment 161 and bring out the plastic bags containing the cocaine.  Roberto and Juan were observed on various occasions handing bags to the peddlers, receiving money from them, and counting that money. The brothers appeared primarily to be supervising the sales, although at times they made direct sales themselves. At least ten people were observed peddling drugs at this drug point, some of whom were minors. In six controlled buys, agents bought bags whose contents tested positive for cocaine and heroin.   ____________________ 1. Because the two defendants share a common last name, we refer to each by his first name. -4- 4 On December 1, 1994, a search of Apartment 161, pursuant to a search warrant, turned up twenty-three bags of cocaine (worth no more than $20 each), measuring scales, plastic baggies, leasing receipts for cars, and empty money wrappers in denominations of $100, $500, and $1000. The scales, money wrappers and leasing receipts were found in Juan's bedroom. In addition, cellular telephone equipment and a beeper receipt were seized. Roberto and Juan were arrested. Roberto was carrying a beeper. Although only $70.66 was found on Roberto, and $2 on Juan, an agent witness estimated the volume of cocaine transactions over the period the apartments were under observation to be approximately eight kilograms, which would have generated an income in the region of $300,000. II. A. Sufficiency of Evidence __________________________ Defendants' most vigorous challenge is to the sufficiency of the evidence supporting their convictions for engaging in a CCE in violation of 21 U.S.C. 848. "In reviewing a sufficiency of the evidence claim we look at the evidence in the light most favorable to the verdict." United ______ States v. Cruz-Kuilan, 75 F.3d 59, 61-62 (1st Cir. 1996). In ______ ___________ order to preserve a sufficiency of the evidence challenge for appeal, a defendant must first move for judgment of acquittal at trial. See United States v. Concemi, 957 F.2d 942, 950 ___ _____________ _______ -5- 5 (1st Cir. 1992). Juan did not do so and has therefore waived his sufficiency challenge. Given waiver, a defendant can succeed only if he can demonstrate that his conviction was "clearly and grossly unjust." Id. at 950. We do not find ___ Juan's conviction to be so. We focus therefore on Roberto's challenge, which was properly preserved. A CCE conviction requires proof that the defendant: (i) committed a felony drug offense; (ii) as part of a continuing series of such violations; (iii) in concert with five or more persons in relation to whom he acted as a supervisor, organizer, or manager; and (iv) from which multiple operations he realized substantial income or other resources. 21 U.S.C. 848(c); Hahn, 17 F.3d at 506. ____ Roberto claims that the government established neither the third nor fourth elements of the CCE offense. (a) Supervisor, Organizer or Manager  ____________________________________ Roberto argues that the evidence was insufficient to show that he was a supervisor, organizer or manager at the drug point. He asserts that there was no direct evidence of his giving orders or instructions to anyone. He further asserts that he was no more than a drug addict working as a low-level drug peddler in order to support his habit. There was evidence sufficient for the jury to find to the contrary. The government need show only that the defendant occupied some managerial position with respect to five or -6- 6 more persons,2 and not that the defendant was the dominant organizer or manager. See Hahn, 17 F.3d at 506 n.4. There ___ ____ was an abundance of evidence from which the jury could reasonably have concluded that Roberto performed a supervisory role with respect to the operation of the drug point. The operation was run out of Roberto's home. At most times Roberto appeared to be monitoring the peddlers as the peddlers executed sales with customers. In an estimated 90% of the transactions observed, the proceeds of the sales by the peddlers appeared to have been turned over to Roberto or Juan. Roberto, specifically, was observed dispensing drugs to the peddlers, receiving the proceeds, and counting those proceeds. Roberto points out that the evidence at trial showed him conducting a few direct sales himself and says that this shows he was merely a peddler. But the fact that Roberto conducted a few sales himself does not insulate him from the evidence demonstrating his supervisory role. There was ample evidence for the jury to reasonably infer that Roberto's role was supervisory. (b) Substantial Income or Resources ___________________________________ Roberto makes two attacks on the sufficiency of the government's evidence as to substantial income or resources. First, he says that there was not sufficient evidence for the  ____________________ 2. It is undisputed that, in addition to Roberto and Juan, the drug point employed at least ten other people. -7- 7 jury to have concluded that a substantial volume of drugs was sold at the drug point. Second, he asserts that in the absence of evidence in the nature of bank accounts, material possessions or an expensive lifestyle, the jury could not have reasonably concluded that the drug point provided him with substantial income. Both arguments fail. First, there was adequate evidence from which the jury could have reasonably inferred that the volume of drug transactions at the drug point was large enough to generate substantial income. Specifically, there was: (i) testimony from government agents that, based on their surveillance over a period of seven months, they estimated the drug point to operate eighteen hours _______________ a day, seven days a week; ________________________ (ii) videotaped surveillance for approximately a six hour period between 12:30 p.m. and 6:25 p.m. on a Friday afternoon that showed twenty-three separate sales to have been made; and (iii) testimony from government agents as to six controlled buys that they had made from the drug point on two Fridays, where the average weight of the purchased amounts of cocaine was .54 grams. At trial, extrapolating from the number of sales for the six hour period, the average weight of the individual amounts purchased, and the evidence that the drug point operated eighteen hours a day, seven days a week, the government estimated monthly sales to be in the order of one and a quarter kilograms. Roberto attacked this estimation at trial, as he does now, asserting that the government should -8- 8 have discounted for the fact that the volume of sales on Fridays was probably higher than that on the weekdays. But even if the jury had been instructed to discount the government's Friday-based estimation, it could still have readily determined that the drug point transacted a high volume of drugs.  Roberto further argues that the government produced no direct evidence of his having accumulated wealth from the drug operation. But the substantial income or resources element can be met by circumstantial evidence of the defendant's role in the operation and the scope of the operation. See Hahn, 17 F.3d at 507; United States v. Roman, ___ ____ _____________ _____ 870 F.2d 65, 75 (2d Cir.), cert. denied, 490 U.S. 1109 _____ ______ (1989). Proof that a large quantity of drugs was sold, in addition to proof of defendant's position in the organization, is adequate to produce the inference that substantial revenue must have been derived. See Hahn, 17 ___ ____ F.3d at 507. Here there was evidence of a high-volume drug operation, from which the jury could reasonably have inferred that substantial income resulted for Roberto, a supervisor. A government witness estimated the income from the operation, for the approximately seven months it was observed, to be almost $300,000. Roberto also points out that he lived in a housing project where the rent was only $3 per month. However, given -9- 9 the evidence of a high-volume drug operation, the jury could have reasonably discounted the lack of evidence as to accumulated wealth. Cf. Hahn, 17 F.3d at 507 n.6 (where ___ ____ government presented evidence of a high-volume drug operation, jury could have reasonably discounted evidence from defendant's father that defendant lived in a trailer park and was constantly short of money). B. Motion to Substitute Counsel _______________________________ Both brothers assert error in the district court's denial of their last-minute motions to substitute counsel. They argue that the district court failed its obligation to make an inquiry into an alleged failure of communication in the attorney-client relationship. The trial transcript shows the argument to be without merit. Denials of motions for substitution of counsel are reviewed for an abuse of discretion. United States v. Diaz- _____________ _____ Martinez, 71 F.3d 946, 950 (1st Cir. 1995). Within that, we ________ consider the circumstances of the denial, such as the timeliness of the motions and whether the attorney-client conflict was so great as to preclude an adequate defense.  United States v. Allen, 789 F.2d 90, 92 (1st Cir.), cert. _____________ _____ _____ denied, 479 U.S. 846 (1986). ______ As to timeliness, the motions were raised on the first day of trial, after the jury was impaneled, and allowance of the motion would have delayed the trial. -10- 10 Questioning by the district court revealed that neither brother had substitute counsel ready to step into place. "[W]hen, as here, the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." United States v. Pierce, 60 F.3d 886, 890 (1st ______________ ______ Cir. 1995), cert. denied, __ S. Ct. __, No. 95-6474 (July 1, _____ ______ 1996); see also Diaz-Martinez, 71 F.3d at 950; United States ___ ____ _____________ _____________ v. Betancourt-Arretuche, 933 F.2d 89, 94 (1st Cir.) ____________________ ("eleventh-hour" requests may interfere with orderly court procedure and are disfavored), cert. denied, 502 U.S. 959 _____ ______ (1991); United States v. Torres, 793 F.2d 436, 440 (1st ______________ ______ Cir.), cert. denied, 479 U.S. 889 (1986). _____ ______ Defendants argue that there was a total lack of communication between themselves and their attorneys. This showed itself, they say, in counsel advising them to plead when they wanted to go to trial. What defendants point to is a disagreement, not a lack of communication precluding an ____________ adequate defense. Indeed, it is an attorney's role to provide a client with his or her independent informed judgment as to the client's options. That the client disagrees with the attorney's weighing of options is not, alone, an adequate basis from which to infer a lack of communication. See Allen, 789 F.2d at 93 (attorney-client ___ _____ disagreement over whether client's better option was to -11- 11 accept plea or go to trial was not, by itself, enough to create good cause for substitution of counsel). The district court made a detailed inquiry as to each brother's reasons for wanting a substitution of counsel. The questioning revealed that counsel for each defendant met with his client on a number of occasions to discuss the case. It further revealed that at least in Roberto's case the real cause of his dissatisfaction was that counsel had not been able to obtain for him as favorable a plea bargain offer as some of his former co-defendants had obtained. But defendant's counsel does not control either what the prosecution charges or is willing to offer. The district court was well within its discretion in denying the motions for substitution of counsel. C. Brady Violation ___ __________ Defendants argue that there was prejudicial error in the prosecution's failure to turn over to the defense certain computer records in violation of the rule established in Brady v. Maryland, 373 U.S. 83 (1963). The computer _____ ________ reports contained the identities of the owners of four cars that government witnesses testified were under the control and in the possession of the defendants. Defendants assert that the information as to the owners' identities would have brought into question the credibility of the government witnesses on the question of the scope of the drug operation -12- 12 and the allegedly substantial income that it generated. They hypothesize that if the owners' identities had been known, they could have been called to testify that the vehicles had not been under the control of the defendants. The district court found no Brady violation, reasoning that since the _____ government witnesses testified only as to the defendants having control and possession of the vehicles, not ownership, the computer reports were not exculpatory. We agree. "To show a Brady violation, the defendant must show _____ (among other factors) that the withheld `evidence was exculpatory, as measured by its materiality.'" United States _____________ v. Watson, 76 F.3d 4, 7 (1st Cir.) (quoting United States v. ______ _____________ Hemmer, 729 F.2d 10, 14 (1st Cir.), cert denied, 467 U.S. ______ ____ ______ 1218 (1984)), cert. denied, 116 S. Ct. 1889 (1996). _____ ______ "Evidence is material if there is a reasonable probability that the outcome of the proceeding would have been different had the evidence been disclosed." See id. (citing United ___ ___ ______ States v. Bagley, 473 U.S. 667, 682 (1985)). ______ ______ In the face of this, defendants have not demonstrated why the information as to ownership of the cars was material. Further, defendants did know who owned the cars they used, as counsel admitted at oral argument. Had the evidence had any exculpatory value, defendants had the ability to present it. III. -13- 13 Defendants appear to challenge their convictions under 21 U.S.C. 841(a)(1) & 846 on the ground that there was insufficient evidence to support a finding that they distributed in excess of five kilograms of cocaine. The challenge is unavailing. The government was not required to prove any particular quantity of drugs before the jury in order to gain convictions under 21 U.S.C. 841 and 846. See United ___ ______ States v. Barnes, 890 F.2d 545, 551-52 & n.6 (1st Cir. 1989), ______ ______ cert. denied, 494 U.S. 1019 (1990). The evidence relating to _____ ______ drug quantity in excess of five kilograms was relevant only at the sentencing phase, and specifically, to whether the defendants were subject to the mandatory minimum sentence of ten years imposed by section 841.3 However, any challenge by ___ the defendants on this sentencing point would be of no practical significance, because their ten-year sentences under Section 841 were imposed concurrently to the twenty- ____________ ______ year mandatory sentences required for their CCE convictions.4 Therefore, we need not address it. See Vanetzian v. Hall, ___ _________ ____ 562 F.2d 88, 90 (1st Cir. 1977) (declining to entertain  ____________________ 3. A mandatory minimum sentence of ten years is triggered if the offense involves five kilograms or more of a mixture containing a detectable amount of cocaine. See 21 U.S.C. ___ 841(b)(1)(A)(ii)(II); see also United States v. Muniz, 49 ___ ____ _____________ _____ F.3d 36, 38 (1st Cir. 1995). 4. The five-kilogram determination does not directly affect the defendants' CCE sentences. -14- 14 challenge to sentence where validity of longer, concurrent sentence was not in question). Affirmed.  ________  -15- 15