**UNITED STATES of America, Appellee,**

v.

**Ashfaq MOHAMMED, Defendant–Appellant.**

**No. 1040, Docket No 93–1596.**

United States Court of Appeals, Second Circuit.

Argued March 11, 1994.

Decided June 23, 1994.

 

Richard M. Jasper, Jr., New York City, for defendant-appellant.

Andrew B. Lachow, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty. for the S.D. of N.Y., Alexandra Rebay, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG, PRATT and MINER, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Ashfaq Mohammed appeals from an August 9, 1993 judgment of conviction and sentence entered in the United States District Court for the Southern District of New York (Walker, Circuit Judge, sitting by designation) after a jury trial, convicting him of possessing a firearm while taking a motor vehicle from another by force and violence or intimidation ("carjacking"), in violation of 18 U.S.C. § 2119, using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), and possessing with intent to distribute cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1) & 841(b)(1)(C). The district court sentenced Mohammed to concurrent seventy-two month prison terms on the carjacking and narcotics counts and a consecutive five-year prison term on the firearms count, to be followed by a three-year term of supervised release. Mohammed also was ordered to provide restitution to the victim and to pay a $150 special assessment. On appeal, Mohammed asserts that the imposition of a consecutive sentence on the firearms count violates the constitutional prohibition against double jeopardy. In addition, he challenges the admission in evidence of an arrest-scene identification and two arrest photographs and claims error in the imposition of a two-level upward adjustment in his guidelines offense level for obstruction of justice. We affirm for the reasons that follow.

## BACKGROUND

On October 26, 1992, Josafat Solis stopped his van at a red light at the intersection of Broadway and 149th Street in Manhattan while driving uptown on Broadway. At the same time, a man carrying a silver .38–caliber revolver and a large red Christmas

stocking was being chased downtown on Broadway toward 149th Street by a group of eight to ten people. Solis heard the commotion and watched the pursuit. Before reaching 149th Street, the gunman crossed the dividing median and headed toward Solis. When the gunman was within ten feet of the van, he aimed the gun at Solis and told him to get out of the van or he would kill him. The gunman then walked up to the driver's side of the van, thrust the gun in Solis' face and repeated his threat. Solis relinquished the van.

Solis immediately ran to a New York City Transit Police car, which was stopped a few cars behind the van at the traffic light, and informed the officers of what had transpired. The officers gave chase and found the van, damaged and unoccupied, several blocks away. They saw Mohammed running away on the opposite sidewalk and proceeded to arrest him. The officers located the .38–caliber revolver and the red stocking nearby. The stocking was found to contain approximately 348 grams of cocaine. When he arrived at the arrest scene, having followed the chase on foot, Solis identified Mohammed as the man who had stolen his van.

Following his arrest, Mohammed told police that he sold leather jackets and was trying to sell one on 152nd Street, when the buyer became angry and a mob of the buyer's friends began chasing him. Mohammed admitted that he stole the van, saying that he did so in order to save his life. He denied possessing the revolver and cocaine.

Prior to trial, Mohammed moved to suppress Solis' arrest-scene identification. The district court denied the motion to suppress, concluding that, although it was suggestive, the identification was sufficiently reliable to warrant admission of the testimony. The trial commenced on April 12, 1993. During the trial, the Government sought to introduce two photographs of Mohammed taken shortly after his arrest. One showed Mohammed standing next to a jail cell and wearing a black jacket. The second photograph was a close-up of Mohammed. Over objection, the district court admitted the photographs into evidence. On April 15, the jury found Mohammed guilty on all three counts.

A sentencing hearing was held on August 4, 1993. Based on a recommendation in the pre-sentence report prepared by the probation department, the district court imposed a two-level enhancement to Mohammed's offense level pursuant to section 3C1.1 of the United States Sentencing Guidelines for obstruction of justice. The enhancement was based on Mohammed's failure to disclose his legal name, Robert Moore, during his initial probation interview. The result was an adjusted offense level of 26 for the carjacking and possession counts. With a criminal history category of I, the appropriate sentencing range for these counts was 63 to 78 months. Adding a sixty-month consecutive sentence for the firearms count, the district court arrived at a sentencing range of 123 to 138 months. The district court sentenced Mohammed to a term of imprisonment of 132 months to be followed by a three-year term of supervised release, ordered Mohammed to provide restitution to Solis for the value of the van, which had been completely destroyed, and imposed a $150 special assessment. This appeal followed.

## DISCUSSION

### 1. Multiple Punishments

On this appeal, Mohammed raises the question of whether imposing a sentence for using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), consecutive to a sentence for the predicate offense of carjacking, in violation of 18 U.S.C. § 2119, violates the constitutional prohibition against double jeopardy. The courts are divided on this issue, with the Fifth Circuit recently concluding that there is no double jeopardy violation. *Compare United States v. Singleton,* 16 F.3d 1419, 1425–29 (5th Cir.1994) (finding no double jeopardy violation), *United States v. Sabini,* 842 F.Supp. 1448, 1151–52 (S.D.Fla.1994) (same), *and United States v. Zukinta,* 830 F.Supp. 418, 420–21 (E.D.Tenn.1993) (same) *with United States v. Smith,* 831 F.Supp. 549, 551–53 (E.D.Va.1993) (refusing to impose consecutive sentence for violation of section 924(c)) *and United States v. Singleton,* 824 F.Supp. 609, 610–12 (E.D.La.1993)

(dismissing section 924(c) count from indictment as duplicative), *rev'd,* 16 F.3d 1419 (5th Cir.1994).

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The clause protects a criminal defendant from multiple prosecutions as well as multiple punishments for the same criminal offense. *United States v. Dixon,* —— U.S. ——, —— ——, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d 556 (1993); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969), *overruled in part on other grounds, Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). In this case we are dealing only with the multiple punishment problem. Where the same conduct violates two statutory provisions, whether each violation is a separate offense is a question of legislative intent. *See Garrett v. United States,* 471 U.S. 773, 778, 105 S.Ct. 2407, 2411, 85 L.Ed.2d 764 (1985). It is well settled that the legislature may impose multiple punishments for the same conduct without violating the Double Jeopardy Clause, so long as it expresses its intent to do so clearly. *See id.* at 778–79, 105 S.Ct. at 2411–12. In *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Court stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *See also Dixon,* —— U.S. at ——, 113 S.Ct. at 2856 (discussing *Blockburger,* or "same-elements," test). However, the *Blockburger* test is "a rule of statutory construction to help determine legislative intent" and "is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett,* 471 U.S. at 778–79, 105 S.Ct. at 2411.

Section 924(c) provides, in relevant part, the following:

> Whoever, during and in relation to *any* crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, *in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.* . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, *nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.*

18 U.S.C. § 924(c)(1) (emphasis supplied). Pursuant to section 924(c)(3), a "crime of violence" includes any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Section 2119, the carjacking statute, is violated by one who, "possessing a firearm ..., takes a motor vehicle ... from the person or presence of another by force and violence or by intimidation, or attempts to do so."

It is clear that a violation of section 2119, the carjacking statute, is a crime of violence within the meaning of section 924(c) and that both statutes require the presence of a firearm during the offense. Several courts addressing the issue have concluded that section 2119 cannot be violated without also violating section 924(c) and that the two provisions thus "fail" the *Blockburger* test. *See Singleton,* 16 F.3d at 1422–25; *Smith,* 831 F.Supp. at 551. Because the legislative intent to impose a consecutive sentence for the violation of section 924(c) is plain from the language of that provision, however, we need not consider the *Blockburger* test to conclude that the consecutive sentence imposed in this case did not violate double jeopardy.

Prior to 1984, section 924(c) provided for a mandatory additional sentence when a firearm was used to commit, or was carried during the commission of, a federal felony. Gun Control Act of 1968, tit. I, § 102, Pub.L. 90–618, 82 Stat. 1213 (1968), *as amended by*

Pub.L. 91–644, 84 Stat. 1889 (1971). In *Simpson v. United States,* 435 U.S. 6, 12–13, 98 S.Ct. 909, 913, 55 L.Ed.2d 70 (1978), the Court held that section 924(c), as it then was written, could not be used to impose a sentence consecutive to the punishment provided under the bank robbery statute, 18 U.S.C. § 2113(d), which already provided for an enhanced maximum sentence where the robbery was committed using a dangerous weapon. In *Busic v. United States,* 446 U.S. 398, 403–10, 100 S.Ct. 1747, 1751–55, 64 L.Ed.2d 381 (1980), the Court extended its holding in *Simpson* and held that section 924(c) could not be used to impose an additional sentence where a predicate felony offense, in that case assaulting a federal officer, has an enhancement provision of its own.

■ Largely in response to *Simpson* and *Busic,* Congress revised section 924(c) in 1984 to essentially its current form.[1] In its report on the Senate bill, the Senate Committee on the Judiciary stated:

The Committee has concluded that subsection 924(c) should be completely revised to ensure that *all persons who commit Federal crimes of violence,* including those crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon, receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime and without the possibility of a probationary sentence or parole.

S.Rep. No. 225, 98th Cong., 2d Sess. 313 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3491 (emphasis supplied) (footnote omitted). A review of the plain language of section 924(c) and its legislative history leads us to conclude that the section was intended to impose an additional, consecutive sentence upon a defendant who commits *any* federal crime of violence while using or carrying a firearm. The use of the phrases "any crime of violence" in section 924(c) and "all persons who commit Federal crimes of violence" in

the Senate report unequivocally convey this message.

It is also important to recognize that, in revising section 924(c), Congress intended to ensure that crimes of violence committed with a firearm carry a mandatory minimum sentence of at least five years. S.Rep. No. 225 at 313, *reprinted in* 1984 U.S.C.C.A.N. at 3491. Like the bank robbery statute at issue in *Simpson,* section 2119 does not have a mandatory minimum sentencing provision. *Compare* 18 U.S.C. § 2113 *with* 18 U.S.C. § 2119. With the availability under the Sentencing Guidelines of downward adjustments and departures, a defendant possibly could receive a sentence of less than five years for a carjacking conviction. Thus, the legislative purpose is served by imposing the mandatory sentence under section 924(c). We note also that the language of section 2119 was modeled after other federal robbery statutes. *See* H.Rep. No. 851, pt. I, 102nd Cong., 2d Sess. 17 (1992), *reprinted in* 1992 U.S.C.C.A.N. 2829, 2834; 18 U.S.C. §§ 2111, 2113, 2118. Since section 924(c) was amended to ensure that these robbery offenses carried mandatory consecutive sentences when committed with a firearm, it seems to us unlikely that Congress did not intend a similar result for the analogous offense of carjacking.

■ Relying on the district court decisions in *Smith,* 831 F.Supp. at 551, *United States v. McHenry,* 830 F.Supp. 1025, 1029 (N.D.Ohio 1993), and *Singleton,* 824 F.Supp. at 611–12, Mohammed asserts that section 2119, which does not mention consecutive sentencing, is a better indication of congressional intent, because it was enacted after the latest amendment to section 924(c). It ordinarily is true, as the district court in *Smith* noted, that "to the extent that the language of statutes conflict, later statutes receive precedence over earlier statutes and specific statutes receive precedence over more general statutes." 831 F.Supp. at 551; *see Simpson,* 435 U.S. at 15–16, 98 S.Ct. at 914–15. These canons of construction are inapplicable in this case, however, because there is

---

1. Section 924(c) was amended in 1986 to extend its coverage to include drug trafficking offenses and has been amended several times since then. None of the amendments is relevant to the issues in this appeal.

no conflict of language between sections 924(c) and 2119. We presume that Congress was aware of the broad language it had used in section 924(c) when it enacted section 2119. Accordingly, there was no need for it to refer to consecutive sentences in section 2119, having provided for them in section 924(c). Had it "intended to exclude the predictable use of § 924(c) in carjacking prosecutions, Congress could have incorporated the necessary limiting language when it wrote § 2119." *United States v. Harwood*, 834 F.Supp. 950, 952 (W.D.Ky 1993).

*2. Admissibility of Identification Testimony*

Mohammed contends that the district court erred in denying his motion to suppress Solis' arrest-scene identification of him. We reject the contention.

At the suppression hearing, Solis and Officer Veronica Vasquez, one of the two officers who arrested Mohammed, testified. According to Solis, approximately thirty seconds elapsed from the time he first noticed Mohammed running down Broadway to the time Mohammed drove off in the van. Solis also testified that he had a completely unobstructed view of Mohammed during this interval.

Officer Vasquez testified that when Solis arrived at the arrest scene she told him that they had arrested the person they believed to be the carjacker. She also recalled showing Solis the revolver and asking him if it was the gun the carjacker had used. Vasquez testified that Solis responded affirmatively to this inquiry. Solis, however, testified that he only recalled being shown the revolver at the police station later that day. Vasquez also asked Solis if he would recognize the carjacker, and he replied that he would. Solis then was brought over to the police car where Mohammed sat handcuffed and identified Mohammed as the person who had carjacked the van. Only ten minutes had passed from the time of the carjacking until Solis' identification of Mohammed in the police car.

Based on the foregoing evidence, the district court stated that, although "the actual show-up was suggestive, including the portion regarding the fact of whether this was the gun … it is my conclusion that the

witness had a substantial opportunity to identify the defendant." The court then held that the identification was sufficiently reliable to warrant admission of the testimony.

 Identification testimony will be excluded when it is based on police procedures that are so suggestive as to create "a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). However, "even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability." *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919, 111 S.Ct. 2018, 112 S.Ct. 383, 114 L.Ed.2d 104, 116 L.Ed.2d 334 (1991).

 Where, as here, a pre-trial show-up is suggestive, the district court must assess the reliability of the identification testimony by considering the following:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). The factors are assessed "in light of the totality of the circumstances." *United States v. Concepcion*, 983 F.2d 369, 378 (2d Cir.1992), *cert. denied*, — U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993). "A good or poor rating with respect to any one of the[ ] factors will generally not be dispositive." *Id.* at 377. We review the district court's determination of the admissibility of identification evidence for clear error. *United States v. Jakobetz*, 955 F.2d 786, 803 (2d Cir.), *cert. denied*, — U.S. ——, 113 S.Ct. 104, 121 L.Ed.2d 63 (1992). We do not find clear error here.

 The testimony given at the suppression hearing shows that Solis had ample opportunity to view Mohammed prior to and during the carjacking. While Mohammed held him at gunpoint, Solis' attention no

doubt was focused on his assailant, and Solis assured Officer Vasquez prior to confronting Mohammed that he would be able to identify the carjacker. There also was only a short interval of time between the carjacking and the identification. The only factor that cuts in Mohammed's favor is that Solis failed to give the police a detailed description of his assailant prior to the identification, commenting only that he was "a man from the black race." However, "the absence of a prior description by the witness does not necessarily render his or her subsequent identification suspect." *Concepcion*, 983 F.2d at 377–78. The fact that Solis closely observed Mohammed for approximately thirty seconds from a short distance and had no hesitancy in identifying him only ten minutes later strongly supports the conclusion that the identification was reliable.

### 3. Admissibility of Arrest Photographs

▪ Mohammed claims that he was prejudiced by the admission of photographs taken of him on the day of his arrest. We reject this claim. Mohammed suggests that the photographs improperly bolstered Officer Vasquez' testimony because they show him wearing the same black jacket and other clothes that he was wearing when arrested. Vasquez testified that she saw a person wearing a black jacket enter the van as Solis exited it and that Mohammed was wearing an identical black jacket when she arrested him ten minutes later. The photographs simply corroborated Vasquez' testimony that Mohammed was wearing a black jacket at the time of his arrest and did not serve to bolster the identification testimony improperly.

▪ Relying on this Court's decision in *United States v. Harrington*, 490 F.2d 487 (2d Cir.1973), Mohammed next contends that the photographs were prejudicial because they placed an "imprimatur of criminality" upon him. Mohammed relies on an inapposite case. In *Harrington*, we held that the introduction at trial of mug shots of the defendant taken in connection with prior crimes was prejudicial error because the photographs improperly informed the jury of the defendant's prior criminal record. *Id.* at

494–96. Here, the photographs were taken at the time of Mohammed's arrest for the crimes charged in *this* case. Thus, the jury was not improperly exposed to evidence of Mohammed's criminal record. Accordingly, we conclude that the district court did not err by receiving the photographs in evidence.

### 4. Obstruction of Justice Enhancement

▪ Mohammed finally asserts that the district court erred in imposing an obstruction of justice enhancement pursuant to U.S.S.G. § 3C1.1. We conclude that there was no error in this regard. The enhancement was based on Mohammed's failure to disclose his legal name, Robert Moore, during his initial probation interview. Under the name Robert Moore, Mohammed had been arrested on several occasions and charged with weapons and narcotics offenses. During a second interview, Mohammed continued to maintain that he had no criminal record and was not Robert Moore. Only after consulting counsel did Mohammed finally admit that he had lied about his name. At the sentencing hearing, Mohammed's counsel explained to the district court that Mohammed had adopted his name for religious reasons and out of respect for his father and that strong emotional and religious feelings made it difficult for him to reveal his legal name.

An obstruction enhancement is warranted when a defendant provides false information to the Probation Department. U.S.S.G. § 3C1.1, application note 3(h); *see, e.g., United States v. Rodriguez*, 943 F.2d 215, 217–18 (2d Cir.1991). Mohammed does not deny that he intentionally withheld his legal name from his probation officer, nor does he dispute that this conduct falls within the Guidelines definition of obstruction. Rather, he suggests that the enhancement should not have been applied because he had "very real emotional and psychological turmoil which underlay the decision to withhold his true name."

Assuming without deciding that a defendant could avoid an obstruction enhancement by showing that exceptionally compelling circumstances gave rise to his obstructive conduct, Mohammed did not make such a show-

 

ing in this case. Prior to sentencing, the district court considered Mohammed's assertion that he adopted the Muslim name Ashfaq Mohammed to please his father. Mohammed had told the probation department that his father had changed his name to Ashfaq Mohammed shortly after his birth. Mohammed also asserted that he had used that name throughout school and in his employment. Mohammed's mother, however, refuted these contentions. She told the probation department that Mohammed started using the Muslim name only after his father's death in 1982. Moreover, the district court noted that Mohammed had used the name Moore after 1982, having used it when he was arrested in 1989. Based on these inconsistencies, the district court concluded that, while "[t]here may be other elements to it, . . . the plain fact is that in 1989 he was arrested for some very serious offenses committed under the name of Robert Moore." The court also stated that "there was all sorts of motivation for him to lie given the outstanding arrest record that Robert Moore had" and that the "fairly obvious inference" was that Mohammed was attempting to conceal his arrest record. These statements by the district court indicate that it simply did not accept Mohammed's explanation for lying to the probation department.

█ In reviewing a sentence imposed under the Guidelines, we must accept the district court's findings of fact unless clearly erroneous and give due deference to its application of the Guidelines to the facts. *See, e.g., United States v. Davis,* 967 F.2d 84, 88–89 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 356, 121 L.Ed.2d 270 (1992). Here, the district court's finding that it was more likely than not that Mohammed intentionally deceived the probation department regarding his true name and arrest record in order to conceal his arrest record is well supported by the record and not clearly erroneous. We thus need not decide whether the obstruction enhancement would be appropriate had Mohammed's proffered reasons for the false statements been accepted by the district court.

## CONCLUSION

The judgment of the district court is affirmed in all respects.