39 F.3d 1183
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Muchaka A. ZUKINTA, Defendant-Appellant.
 No. 93-6595.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1994.
 
 Before: MILBURN, BOGGS, and NORRIS, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant Muchaka Amal Zukinta[1] appeals his jury convictions of one count of taking a motor vehicle by force, violence, and intimidation while possessing a firearm, i.e., armed carjacking, in violation of 18 U.S.C. Sec. 2119; one count of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. Sec. 924(c); and one count of unlawful possession of a firearm by a previously convicted felon in violation of 18 U.S.C. Sec. 922(g). On appeal, the issues are (1) whether the district court abused its discretion in granting the jurors' request to have selected portions of the trial testimony read to them during their deliberations, (2) whether the district court committed reversible error in its jury instructions concerning 18 U.S.C. Sec. 922(g), and (3) whether defendant's convictions of both armed carjacking in violation of 18 U.S.C. Sec. 2119 and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. Sec. 924(c) violated the double jeopardy clause of the Fifth Amendment. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On December 14, 1992, Archie Cross was employed as a car salesman at Capital Toyota, which is located on Brainerd Road in Chattanooga, Tennessee. At approximately 9:45 a.m., Cross observed defendant walking around the Capital Toyota lot looking at cars. Defendant was wearing a double-breasted suit and a tie. Cross went over to defendant to ask if he could help him. Defendant expressed interest in three automobiles, a red Pontiac Fiero, a yellow Chevrolet Camaro IROC, and a Ford Mustang 5.0. Defendant also gave Cross a business card, which identified him as Bob Cantrell.
 
 
 3
 Cross then attempted to sell one of the automobiles to defendant. After some discussion, defendant asked to take a 1987 yellow Camaro IROC for a test drive and insisted that Cross accompany him on the test drive. Specifically, defendant told Cross that he would have to accompany defendant to the home of his girlfriend's parents and that Cross would have to help defendant get the approval of his girlfriend's parents before defendant would purchase the Camaro IROC.[2] Defendant told Cross that his girlfriend's parents lived on Gunbarrel Road in Chattanooga.
 
 
 4
 Cross obtained the keys for the Camaro IROC, and he and defendant took the car for a test drive with defendant driving. Defendant then drove the automobile to a wooded area near Gunbarrel Road and drove into the parking lot behind the Hawkinsville Baptist Church. Defendant turned the engine off, and he and Cross exited the automobile. As Cross was exiting the automobile, defendant came around the back of the automobile, pulled out a gun, pointed it at Cross and stated, "Buddy, I got to do this." J.A. 107.
 
 
 5
 As Cross pleaded with defendant, defendant pushed Cross behind the church building and told Cross to run into the woods. As Cross was running into the woods, he heard defendant start the engine of the yellow Camaro and drive away. Subsequently, Cross was able to flag down a passing motorist, who took Cross to her home so that Cross could telephone the police.
 
 
 6
 Anthony Casteel, an employee of Capital Toyota, arrived at work at approximately 9:00 a.m. on the morning of December 14, 1992. Casteel saw defendant walking around the parking lot and recognized defendant since they had grown up together and had attended the same high school. Casteel and defendant had a short conversation about "old times." J.A. 82.
 
 
 7
 Casteel testified that later that morning his supervisor approached him and asked him the name of the person he had been talking to on the parking lot. Casteel identified defendant, and his supervisor told him that defendant "just took off with Archie Cross and robbed him and stole the car." J.A. 82.
 
 
 8
 Officer David Cliett of the Chattanooga Police Department interviewed Anthony Casteel and Archie Cross on that same day, December 14, 1992. The interview took place at Capital Toyota at approximately 11:45 a.m. During the interview, Casteel identified defendant.
 
 
 9
 After the interview, Officer Cliett obtained photographs of defendant. He returned to Capital Toyota and showed a photographic lineup to Archie Cross, who identified defendant as the carjacker. Officer Cliett then showed the photographic lineup to Anthony Casteel, who also identified defendant.
 
 
 10
 Officer Cliett then obtained two arrest warrants for defendant: an arrest warrant for one count of aggravated kidnapping, and an arrest warrant for one count of aggravated robbery. Subsequently, on December 15, 1992, Officer Cliett learned that defendant was staying at the home of his brother-in-law, Harvey Mack, at 119 Connie Court in Cleveland, Bradley County, Tennessee. Officer Cliett then notified the Bradley County Sheriff's Department that he had two arrest warrants for defendant, and he sent facsimiles of certified copies of the arrest warrants to the Bradley County authorities.
 
 
 11
 After receiving the facsimile copies of the arrest warrants on December 15, 1992, Chief Anthony Benefield of the Bradley County Sheriff's Department drove to the home of defendant's brother-in-law. As Chief Benefield drove past the residence, he observed defendant and another man washing a yellow Camaro IROC in the driveway. When Chief Benefield approached the yellow Camaro, he saw defendant reach into the car. Chief Benefield drew his weapon and ordered defendant to lay down on the driveway. Defendant offered no resistance and Chief Benefield proceeded to arrest and handcuff defendant.
 
 
 12
 Defendant observed Chief Benefield looking at the car and commented that he had just borrowed it from a friend. Chief Benefield then proceed to search the yellow Camaro. Chief Benefield noted that the Camaro had a dealer license tag, which read "A-R-C-H." J.A. 76-77. Chief Benefield found two more license tags in the back seat of the Camaro, one was a dealer tag and the other said Capital Toyota. Chief Benefield also photographed the vehicle.
 
 
 13
 At approximately the same time, Officer Cliett and Officer Wilhoite, Chattanooga police officers, arrived on the scene. Chief Benefield gave the photographs of the yellow Camaro IROC to one of the Chattanooga officers.
 
 
 14
 Harvey Mack, defendant's brother-in-law, then came out of the residence. Mack told the police officers that the residence was his and defendant was staying there. Chief Benefield then asked Mack if there were any weapons in the home. Mack took Chief Benefield and one of the Chattanooga officers into one of the bedrooms and pulled a handgun, an H & R .22 caliber revolver, out of the closet. Mack kept the gun in the pocket of one of his suits, which he kept hanging in the back of his closet. The gun was wrapped in either a piece of cloth or plastic. Mack unwrapped the gun and gave it to Chief Benefield.[3] Chief Benefield took the handgun downstairs, gave Mack a receipt for the gun, and turned it over to one of the Chattanooga officers. The handgun was not tested for fingerprints because Chief Benefield informed the Chattanooga officers that it had been handled.
 
 
 15
 Thereafter, Officer Cliett drove the yellow Camaro IROC from Cleveland to the Capital Toyota lot in Chattanooga. Officer Wilhoite also drove back to Chattanooga with defendant, following Officer Cliett in another vehicle.
 
 
 16
 After leaving the yellow Camaro IROC at Capital Toyota, the officers drove defendant to Officer Cliett's office where Officer Cliett advised defendant of his Miranda rights. Defendant refused to sign a waiver of rights form, but he indicated that he understood his Miranda rights. He then gave an oral statement to the officers.
 
 
 17
 Defendant's description of the carjacking on December 14, 1992, is identical to the facts set forth above, except that defendant denied that he ever had a gun. Rather, he told the officers that after parking the car behind the Hawkinsville Baptist Church, he put his right hand into his pocket as he was walking around the car and told Archie Cross, "Man, I don't want to have to do this." J.A. 92. Defendant further stated that once he had taken the car, he intended to let the car sit for 72 hours before driving it, because the Chattanooga police would look for the yellow Camaro for 72 hours and then give up the search.[4]
 
 B.
 
 18
 On January 26, 1993, defendant was charged in a three-count indictment. A superseding indictment was filed on February 23, 1993.[5] Count one of the superseding indictment charged defendant with having taken a motor vehicle, which had been shipped in interstate commerce, by force, violence, and intimidation while possessing a firearm, in violation of 18 U.S.C. Sec. 2119. Count two of the superseding indictment charged defendant with using and carrying a firearm during and in relation to a crime of violence, namely, the offense charged in count one of the superseding indictment, in violation of 18 U.S.C. Sec. 924(c). Count three of the superseding indictment charged defendant with possession of a firearm after having previously been convicted of a felony in violation of 18 U.S.C. Sec. 922(g).
 
 
 19
 On August 4, 1993, defendant filed a motion for dismissal of the charge in count two of the superseding indictment, on the ground that it was a violation of the double jeopardy clause of the Fifth Amendment to charge him with both of the offenses charged in counts one and two of the superseding indictment. On August 13, 1993, the district court issued a memorandum and order denying defendant's motion to dismiss. Subsequently, on September 9, 1993, the district court issued an amended memorandum and order denying the motion to dismiss count two of the superseding indictment. See United States v. Zukinta, 830 F.Supp. 418 (E.D.Tenn.1993).
 
 
 20
 Defendant's jury trial commenced on September 8, 1993. On September 10, 1993, the jury found defendant guilty of all three of the offenses charged in the superseding indictment.
 
 
 21
 On November 15, 1993, defendant was sentenced to 78 months imprisonment on each of counts one and three, with the sentences to be served concurrently, and 60 months imprisonment on count two, with the sentence to be served consecutive to the sentences imposed on counts one and three. Further, defendant was sentenced to terms of three years of supervised release on each of counts one, two and three, with the terms of supervised release to run concurrently. This timely appeal followed.
 
 II.
 A.
 
 22
 Defendant argues that the district court abused its discretion in having the testimony of Officer Cliett reread to the jury, at the jury's request during its deliberations. Defendant also argues that the district court abused its discretion in failing to have a portion of Harvey Mack's testimony reread to the jury.
 
 
 23
 This court reviews a district court's decision to read testimony to the jury under an abuse of discretion standard. United States v. Padin, 787 F.2d 1071, 1076 (6th Cir.), cert. denied, 479 U.S. 823 (1986). "It is within the judge's discretion to re-read testimony for a deliberating jury." United States v. Licavoli, 725 F.2d 1040, 1049 (6th Cir.), cert. denied, 467 U.S. 1252 (1984).
 
 
 24
 In exercising its discretion to reread testimony to a deliberating jury, "the court 'can and should take into consideration the reasonableness of the jury's request and the difficulty of complying therewith.' " Padin, 787 F.2d at 1076 (quoting United States v. Almonte, 594 F.2d 261, 265 (1st Cir.1979)). Further, two inherent dangers have been recognized in reading testimony to a jury during its deliberations: the jury may accord undue emphasis to the testimony which has been reread, and the jury may take out of context the limited testimony which has been reread. Padin, 787 F.2d at 1076.
 
 
 25
 In this case, the jurors asked nine questions during their deliberations. Approximately an hour and a half after beginning their deliberations, the jurors sent a note to the court asking the following questions:
 
 
 26
 How was the gun wrapped when found or removed from the suit of the jacket.
 
 
 27
 Was the gun wrapped the same way Mr. Mackey [sic] had it in the closet originally?
 
 
 28
 J.A. 71. In response, the jurors were called back into the courtroom and instructed by the court that they would have to rely on their own recollection and evaluation of the testimony and other evidence for the answers to their questions.
 
 
 29
 Three hours later, the jury sent a note asking the following questions:
 
 
 30
 How did Mr. Mackey [sic] state the gun was wrapped when removed from the closet?
 
 
 31
 Where did this white cloth come from [sic] presented in court?
 
 
 32
 How did Mr. Cross state the gun was presented to him at the church?
 
 
 33
 J.A. 72. As was done before, the jurors were called back into the courtroom and instructed that they would have to rely on their own recollections to answer their questions.
 
 
 34
 Thirty minutes later, the jurors sent another communication to the court asking:
 
 
 35
 Can we see the police report for Dec[ember] 14 and December 15, 1992.
 
 
 36
 When Clyde [Officer Cliett] took the statement from Cross did he (Cross) describe the gun as being wrapped. We have several different versions.
 
 
 37
 J.A. 73. In response to the jury's third set of questions, the parties agreed that a portion of the testimony should be reread to aid the jury in its deliberations. Accordingly, without objection from either party, the district court permitted portions of the testimony of Officer Cliett, Archie Cross, and Chief Benefield relating to the gun to be read to the jury. In addition, the entire testimony of Harvey Mack was read to the jury, and defendant did not request that it be reread at any subsequent time.
 
 
 38
 Furthermore, prior to the re-reading of the testimony, the court also gave the following cautionary instruction to the jury:
 
 
 39
 I want to caution you and remind you that ... you should base your verdict in this case on all the evidence in the case, taken as a whole. We're only reading these parts because you have asked about some of these matters, but you must base your verdict on all the evidence and, of course, on the Court's charge....
 
 
 40
 J.A. 163.
 
 
 41
 Sometime later, the jury asked the following question:
 
 
 42
 Did Cross make any statement to the police on Dec[ember] 14, 1992 that there was a gun in the robbery.
 
 
 43
 J.A. 74. In response to their question, the jury was instructed:
 
 
 44
 The police report is not in evidence. Therefore, we cannot show it to you. I cannot answer specific questions which you have submitted about the facts. You will have to rely on your recollection of the evidence you heard in court. If you want any particular testimony read back, please let me know.
 
 
 45
 J.A. 168.
 
 
 46
 Shortly thereafter, the district court received another communication from the jury:
 
 
 47
 Can we hear Sergeant David Cliett's complete testimony?
 
 
 48
 J.A. 168.
 
 
 49
 Over the defendant's objection, the district court permitted the entire testimony of Officer Cliett to be reread to the jury. After the rereading of Officer Cliett's testimony, the following cautionary instruction was given to the jury:
 
 
 50
 Ladies and gentlemen, we've read a part of the testimony in this case at your request. You should, however, consider this testimony only as a part of all the testimony in this case. In making your decision in this case, you should base your decision on all the testimony together, of course, with the Court's jury instructions.
 
 
 51
 J.A. 171.
 
 
 52
 Defendant asserts that the rereading of Officer Cliett's testimony placed undue emphasis on the testimony of a government agent. Defendant also asserts that rereading Officer Cliett's testimony was unresponsive to the jury's questions.
 
 
 53
 As earlier stated, when portions of the testimony of Officer Cliett, Archie Cross, and Chief Benefield, as well as the entire testimony of Harvey Mack were read to the jury, defendant did not object. Further, defendant did not object thereafter when the district court told the jury:
 
 
 54
 If you want any particular testimony read back, please let me know.
 
 
 55
 J.A. 168. Only after the jury requested the rereading of the testimony of Officer Cliett, did the defense reverse its position and object. The district court considered this inconsistent on the part of the defense and overruled the objection.
 
 
 56
 Further, the district court also demonstrated its concern that the rereading of testimony to the jury during its deliberations should not unduly emphasize those portions of the testimony. In that regard, the district court gave appropriate cautionary instructions to the jury about the importance of considering the evidence in its entirety. Therefore, we conclude that the district court did not abuse its discretion in having Officer Cliett's testimony reread to the jury, at the jury's request during its deliberations.
 
 B.
 
 57
 Defendant argues that the district court committed plain error in its jury instructions concerning count three of the indictment, the charge of being a felon in possession of a firearm. As noted above, the parties stipulated that the H & R .22 caliber firearm listed in the indictment had travelled in interstate commerce prior to December 14, 1992. In its jury instructions concerning count three, the district court instructed the jury:
 
 
 58
 You should apply the definition of "firearm" that I gave you in the instructions for Count 1. As with the other counts, the firearm need not have been the one [introduced] in government's exhibit 3.[6]
 
 
 59
 J.A. 61. Defendant did not object to the district court's jury instruction. However, he now asserts that the instruction was plain error because it "had the effect of instructing the jury that it did not have to find that the firearm used had moved in interstate commerce." Appellant's brief at 17.
 
 
 60
 "The standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984). However, if a defendant does not object to an instruction at trial, he can obtain relief only if he can demonstrate "plain error." United States v. Wuliger, 981 F.2d 1497, 1501 (6th Cir.1992). In reviewing for plain error, this court must first consider whether an error occurred in the district court. United States v. Olano, 113 S.Ct. 1770, 1777 (1993). If no error occurred, the inquiry is at an end. However, if error occurred, we must then consider whether the error was plain. Id. If the error was plain, we must then consider whether the error affects substantial rights. Id. at 1777-78. Finally, if all three factors exist, this court must consider whether to exercise its discretionary power under Federal Rule of Criminal Procedure 52(b) to correct the plain error; namely, we must determine whether the plain error affecting substantial rights seriously affected the fairness, integrity, or public reputation of the proceedings. Id. at 1779. In this case, defendant has failed to establish any error on the part of the district court. First, the stipulation of the parties related to the firearm charged in the indictment, not the firearm produced by the government in government's exhibit 3. Further, the district court only told the jury that the firearm used need not have been the one introduced by the government in exhibit 3. However, the district court never told the jury that it need not find that the firearm used by defendant need not have travelled in interstate commerce.
 
 
 61
 Moreover, during his trial testimony, Archie Cross identified government's exhibit 3 as the handgun which defendant pointed at him during the carjacking. Although the defense argued that Cross was mistaken in that regard, the jury obviously believed Cross's testimony. Further, the jury also obviously concluded that government's exhibit 3 was the firearm charged in the indictment, to which an interstate nexus had been stipulated. Therefore, the district court did not err in its jury instructions.
 
 C.
 
 62
 Defendant argues that the double jeopardy clause of the Fifth Amendment prohibits the imposition of cumulative punishment for armed carjacking under 18 U.S.C. Sec. 2119 and the use of a firearm during a crime of violence under 18 U.S.C. Sec. 924(c). This court considered this issue in the case of United States v. Johnson, 22 F.3d 106 (6th Cir.1994). In Johnson, we stated:
 
 
 63
 We agree with the holding and reasoning of ... the Fifth Circuit in United States v. Singleton, 16 F.3d 1419 (5th Cir.1994), that "Congress has clearly indicated its intent to punish cumulatively violations of Secs. 2119 and 924(c)". 16 F.3d at 1425. The language of Sec. 924(c) is plain. The statute mandates a five year, mandatory, consecutive sentence "in addition to" the punishment for the other crime of violence.
 
 
 64
 * * *
 
 
 65
 For the reasons stated at length by the Fifth Circuit, ... Congress wanted to make sure in Sec. 924(c) that all federal crimes of violence committed with a firearm are enhanced, even though the other more specific crime of violence also requires the presence of a firearm. Congress intended to impose additional punishment for the same conduct, and the Double Jeopardy Clause does not proscribe multiplying the punishment in this way.
 
 
 66
 Id. at 108.
 
 
 67
 This same issue was also considered by the Second Circuit in United States v. Mohammed, 27 F.3d 815 (2d Cir.1994). The Second Circuit noted that several courts have held that Secs. 2119 and 924(c) "fail" the Blockburger test. Id. at 819. However, in holding that imposing a sentence for the violation of Sec. 924(c) consecutive to the sentence imposed for the violation of Sec. 2119 did not violate the Double Jeopardy Clause, the Second Circuit stated, "because the legislative intent to impose a consecutive sentence for the violation of section 924(c) is plain from the language of that provision, ... we need not consider the Blockburger test to conclude that the consecutive sentence ... did not violate double jeopardy." Id. Therefore, the imposition of cumulative punishments for the violation of Secs. 2119 and 924(c) does not violate the Double Jeopardy Clause of the Fifth Amendment, and the district court did not err in denying defendant's motion to dismiss count two of the superseding indictment.
 
 III.
 
 68
 For the reasons stated, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 Defendant Zukinta was formerly known as Todd Anthony King
 
 
 [2]
 Cross testified that the purchase price of the Camaro was $6,995
 
 
 [3]
 At trial, Harvey Mack testified that the gun was wrapped in plastic. J.A. 144. He also testified that as he was giving the gun to Chief Benefield, Chief Benefield told him not to unwrap it. J.A. 148
 Mack testified that only he, and perhaps his wife, knew where he kept his gun. J.A. 145-46. Mack also testified that based upon the position of the gun, he did not believe it had been touched. J.A. 147, 149.
 
 
 [4]
 At trial, the parties also entered into the following stipulations:
 [T]he H & R .22 caliber firearm listed in the indictment was manufactured outside the state of Tennessee and therefore had traveled in interstate commerce prior to December 14th, 1992.
 The Camaro IROC listed in the indictment has been shipped in interstate commerce prior to December 14th, 1992.
 Defendant was convicted of the felonies listed in Count 3 of the indictment.
 J.A. 141-42. Count three of the superseding indictment listed felony convictions of grand larceny on November 19, 1982; kidnapping on June 27, 1986; and armed robbery on June 27, 1986. J.A. 10.
 
 
 [5]
 In the original indictment, defendant's name was stated as Todd Anthony King. The superseding indictment stated defendant's name as Muchaka A. Zukinta
 
 
 [6]
 Government's exhibit 3 was the handgun which Harvey Mack gave to Chief Benefield on December 15, 1993