USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1187 UNITED STATES OF AMERICA, Appellee, v. HAROLD F. CHORNEY, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Scott A. Lutes for appellant. ______________ Seymour Posner, First Assistant United States Attorney, with whom ______________ Sheldon Whitehouse, United States Attorney, was on brief for the ___________________ United States. ____________________ OCTOBER 29, 1996 ____________________ Per Curiam. On May 27, 1993, a jury in the federal __________ district court in Rhode Island found Harold Chorney guilty of seven counts of making a false report and statement to a federally insured bank in violation of 18 U.S.C. 1014. United States v. Chorney, 63 F.3d 78, 80 (1st Cir. 1995). At _____________ _______ trial, the gravamen of the case against Chorney was that he "engineered a false appraisal" in order to convince the bank that the rare coins he offered as collateral were worth vastly more than their actual value, thus enabling him to obtain a series of loans, extensions and renewals that totaled $2.5 million by May 1989. Chorney, 63 F.3d at 79-80. _______ On direct review, this court affirmed Chorney's conviction and sentence. Chorney, 63 F.3d at 81, 83. While _______ the appeal was pending, Chorney filed a motion for a new trial based on newly discovered evidence, Fed. R. Crim. P. 33, and supplemented the motion with claims of Brady and Fed. _____ R. Crim. P. 16 violations. The district court denied that motion on January 22, 1996, and Chorney now appeals from the denial. At trial, critical testimony against Chorney was provided by William Tebbetts, who appraised the coins in question in 1985, and Ann Fiumefreddo, Chorney's secretary. Tebbetts testified that Chorney gave him the money necessary to purchase the business, renamed Mayflower Coin and Stamp Company, that ultimately appraised the coins. Tebbetts -2- -2- examined hundreds of the coins pledged as collateral by Chorney to Eastland Bank, and graded all of them between MS- 62 and MS-64. However, at Chorney's request, Tebbetts agreed two months later to sign an appraisal letter written on Mayflower letterhead which stated that all of the coins were of substantially higher MS-65 "gem" quality. Tebbetts testified that he signed the appraisal letter to avoid losing his job. The letter did not reveal that Chorney owned Mayflower and employed Tebbetts. Fiumefreddo, who typed the letter at Chorney's direction, testified that she asked Chorney whether it was appropriate to have one company that he owned appraise another company that he owned. Chorney responded, "You're better off not knowing or don't ask questions; something to that effect." Chorney, 63 F.3d _______ at 79-80. In his new trial motion, Chorney contended that the original "collateral" coins were either removed and replaced with coins of lesser value or mishandled and damaged, causing them to lose value. To support his theories of switching or mishandling, Chorney pointed to videotapes, still photographs and a stenographic transcript of the August 1990 removal of his company's assets by order of a bankruptcy trustee. He also relied upon alleged discrepancies between different inventories of the collateral coins which were held by the bank. -3- -3- Chorney's position is that all of this evidence constitutes newly discovered evidence. In addition, he contends that the failure to provide the videotapes and related records of the August 1990 coin transfer to the defense involved violation by the government of its disclosure duties under Brady v. Maryland, 373 U.S. 83, 87 _____ ________ (1963) and Fed. R. Crim. P. 16(a)(1)(C). The government responds that it offered videotapes to Chorney's lawyer, who chose not to view them. In any case, the recorded August 1990 removal of Chorney's business assets involved none of the collateral coins at issue. The connection is simply Chorney's claim that any government carelessness evident from the videotapes and other evidence would suggest that the government's movement of 953 collateral coins among bank branches on a separate occasion (for valuation purposes in connection with Chorney's bankruptcy case) probably involved similar carelessness and damage to the coins. As for the inventory discrepancies--which do involve the inventory coins--the inference is also extremely thin. Although Chorney claims that there were 141 discrepancies between two different inventories (one by the FBI and one by Sotheby's), it appears that this greatly overstates the number. But in any case even differences as to 141 coins would represent less than two percent of the 7820 coins -4- -4- offered as collateral for the bank loan and appraised as MS- 65 for significantly more than their actual value.  Chorney's Brady and Rule 16 claims, and his motion for a _____ new trial based on newly discovered evidence, all fail unless Chorney shows that the evidence to which he points would likely produce a different result on retrial. United States _____________ v. Watson, 76 F.3d 4, 7 (1st Cir. 1996) (Brady); United ______ _____ ______ States v. Hemmer, 729 F.2d 10, 13 (1st Cir.), cert. denied, ______ ______ ____________ 467 U.S. 1218 (1984) (Rule 16); United States v. Tibolt, 72 _____________ ______ F.3d 965, 971 (1st Cir. 1995) (new trial motion), cert. _____ denied), 116 S. Ct. 2554 (1996). Even if we considered the ______ issue of prejudice de novo (the standard of review is complex _______ and not worth pursuing here), Chorney's showing of prejudice is patently inadequate. As our brief (and understated) description of the trial evidence shows, the government had a powerful case against Chorney. By contrast, nothing in the evidence now adduced suggests that there was any massive switch of collateral coins or that they were damaged en masse during the course of ________ some relocation. The likelihood that this new evidence would have altered the outcome of the trial approaches zero. Affirmed. _________ -5- -5-